# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MONTANA

In re

**TIMOTHY JAY FIX** and
**BEVERLY ANN BAUER-FIX**,

　　　　　　　Debtors.

Case No.  **15-60251-13**

# MEMORANDUM OF DECISION

At Butte in said District this 30th day of November, 2015.

Debtors' five Motions to avoid judicial liens on their claimed Montana homestead[1] exemption, (Document Nos. 41, 42, 43, 44, and 45) under 11 U.S.C. § 522(f)(1)(A), including three judicial liens held by Collection Bureau Services, Inc. ("CBS"), and liens held by William & Garnet Kinney ("Kinney") and The Estate of Kent Olson, deceased by and through its Co-Personal Representatives Richard Olson and Scott Olson (the "Olson Estate"), are pending in this Chapter 13 case.  The Court held a hearing on Debtors' five Motions at Missoula on October 8, 2015.  At the conclusion of the hearing, the Court gave the parties time to file post-hearing briefs, which have been submitted and reviewed by the Court along with the record and applicable law. This matter is ready for decision.  For the reasons set forth below, the objections filed by Kinney and Olson will be overruled and Debtors' five Motions to Avoid Lien will be granted by separate Order; the above-named creditors' judicial liens on Debtors' Montana homestead are avoided

---

[1] Debtors' claimed homestead exemption is located at 21335 Old Highway 93, Florence, MT 59833, and legally described as "LOT 6A OF CARLTON TRACTS NO. 3, according to the official map or plat on file and of record in the office of the Clerk and Recorder, Missoula County, Missoula, Montana."

1

under § 522(f)(1)(A).

Daniel S. Morgan of Missoula represented Debtors at the hearing; Debtor Beverly Ann Bauer-Fix ("Beverly") testified. Harold V. Dye of Missoula represented The Olson Estate. Raymond P. Tipp of Missoula represented Kinney. The Court admitted: Debtors' Exhibits ("Ex.") 1, 2, 3, 4, and 5; Olson's Ex. A, B, C, and D; and Kinney's Ex. G into evidence by stipulation. CBS filed no response and made no appearance at the hearing, which by operation of Montana Local Bankruptcy Rule 9013-1(f) is deemed an admission by CBS that the relief requested should be granted.

This Court has exclusive jurisdiction of this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a). Debtors' five Motions to avoid judicial liens are core proceedings under 28 U.S.C. § 157(b)(2).

## FACTS

Debtors, Kinney and the Olson Estate filed a "Statement of Stipulated Facts" on October 8, 2015 (Doc. 77), which sets for the following undisputed facts:

> 1. Timothy Fix bought residential real property located at 21335 Old Highway 93, Florence, Montana [the MT property] from Kent Olson on March 11, 2005. See Debtors' proposed Exhibit 1;

> 2. The MT property is legally described as "LOT 6A OF CARLTON TRACTS NO. 3, according to the official map or plat on file and of record in the office of the Clerk and Recorder, Missoula County, Missoula, Montana." See Debtors' proposed Exhibits 1 & 3;

> 3. Timothy Fix, his wife Beverly Bauer-Fix, and their child, moved on to the MT property as their residence in March 2005;

> 4. On March 7, 2008, the Fixes recorded a Declaration of Homestead on the MT property with the Missoula County Clerk & Recorder. See Debtors' proposed Exhibit 3;

5. In the winter of 2014-15, Timothy Fix closed his own auto repair shop in Missoula County and drove his and Beverly's motor home to Arizona for employment as a mechanic.  He took a full-time position at Lakeside Tire & Auto Service in Lake Havasu, AZ in December 2014. Beverly Fix and their child remained behind on the MT property and Beverly continued in her job as a school bus driver for Majestic;

6. On February 25, 2015 and March 5, 2015, the Fixes signed a Purchase and Sale Agreement for the MT property with Shawn and Janis Fontaine.  See Olson Estate's proposed Exhibit A;

7. On February 26, 2015, the Fontaines had a relative wire $40,000.00 to Beverly Fix's bank account at Farmers State Bank for the down payment due under the Purchase and Sale Agreement;

8. Between March 13-15, 2015, the Fixes negotiated and signed a Buy-Sell Agreement to purchase residential real property located at 21 Southwester Ln., Lake Havasu, Arizona [the AZ property].  See Olson Estate's proposed Exhibit B;

9. The Fixes used $30,000 of the $40,000 received from the Fontaines to make the down payment on the AZ Property through escrow.[2]  See Olson Estate's proposed Exhibit C;

10. The Fixes filed the instant Chapter 13 petition on March 30, 2015;

11. The Fixes closed on the AZ property on April 1, 2015.  See Olson Estate's proposed Exhibit C;

12. The deed from Hailers to Fixes was dated March 27, 2015; notarized on March 30, 2015 and recorded on April 1, 2015.  See Olson Estate's proposed Exhibit D.

13. The Fixes did not list Hailers as creditors under either Schedule D or F or as counter-parties to an executory contract in Schedule G.

14. The Fixes are keeping animals and personal property on the MT Property to this day, pending closing of that sale to the Fontaines;

15. The sale of the MT Property to the Fontaines has not yet closed, although the Court entered an Order on October 6, 2015 approving the sale;

---

[2] Beverly testified on cross examination that they paid the $30,000 to Hailers on or about March 14, 2015.

16. The MT Property is encumbered by a first mortgage to Select Portfolio Services in the amount of $169,182.41. See Debtors' proposed Exhibit 4;

17. The MT property has a value of $335,000. See Olson Estate's proposed Exhibit A;

18. Even before deducting second and third mortgages held by First Security Bank against the MT property totaling approximately $38,000 (Proofs of Claim 13 & 16), there is less than $250,000 of equity in the MT property;

19. The Estate of Kent Olson has a judgment lien on the MT property for $48,184.38. See Debtors' proposed Exhibit 5;

20. William & Garnet Kinney have judgment liens on the MT property for $10,419.11. See Kinneys' proposed Exhibit F;

21. Collection Bureau Services holds three separate judgment liens on the MT property totaling approximately $5,000.

Doc. 77.

Other undisputed facts may be gleaned from the testimony and exhibits admitted into evidence, and the documents on the case docket. The declaration of homestead which Timothy and Beverly signed and recorded on March 7, 2008, states that they "actually reside on the premises located at 21335 Old Highway 93, Florence," Montana, and claim it as their homestead "for the joint benefit of each of us, and our family." Ex. 3.

On their Chapter 13 petition Debtors stated that their street address was 21335 Old Highway 93 in Florence, Missoula County, Montana.[3] Beverly testified that Debtors' declaration under penalty of perjury that Debtors' Schedules were true and accurate was effective March 30, 2015. They filed their Schedules and Statement of Financial Affairs ("SOFA") on April 27, 2015

---

[3] Debtors filed a notice of change of address (Doc. 20) on April 27, 2015, changing their address to 21 Southwester Lane, Lake Havasu City, AZ 86403.

(Doc. 13).[4]

Beverly testified that, as of March 30, 2015, the Fixes had no residence other than 21335 Old Highway 93 in Florence, and they had not received a deed to the Arizona property from the Hailers. She testified that they received a deed to the Arizona property from Hailers after the April 1, 2015, closing. Prior to closing, she testified, the Hailers did not allow them to move into the house on the Arizona property, but that after the closing, in May 2015, they moved into the house on the Arizona property and were living there on the date of the hearing. On cross examination, Beverly testified that she briefly lived in her motorhome with her husband on the Arizona property prior to the closing.

The purchase contract between the Fixes and Hailers, Ex. B, provides that the close of escrow of the sale shall occur on April 1, 2015. In addition, Ex. B requires that the Fixes make an additional $10,000 down payment delivered by November 15, 2015, and the sellers would finance the $169,900 amount due in monthly payments, with a balloon payment due September 1, 2018. Beverly testified that the down payment they received from Fontaines are proceeds which are directly traceable from the sale of 21335 Old Highway 93 in Florence, and that it has been less than 18 months since they entered into the contract for deed with the Fontaines.

The notice of commencement of case and deadlines was mailed to creditors and parties in interest on April 2, 2015, including to Kinney and Olson. A deadline of 30 days after the conclusion of the meeting of creditors for filing objections to Debtors' claims of exemption was included in the notice. Two meetings of creditors were held on May 14, 2015, and on June 15,

---

[4] Their signatures on the declarations for the Schedules and SOFA were dated April 23, 2015.

2015.  Beverly testified that they discussed the purchase agreement of the Arizona property with the Trustee at the creditors' meeting.  Afterwards, no timely objection to Debtors' claimed homestead declaration in 21335 Old Highway 93 in Florence was filed.

Debtors' Schedule A lists the Florence residence as real property owned in fee simple by "H" with a current value of $335,000.00 securing claims in the amount of $265,831.83.  Beverly testified that Debtors were still in possession of their Florence residence at the time they filed their petition, and they had approximately $120,000 in equity.  Also listed on Schedule A ("Real Property") is $30,000 described as "Earnest money for purchase of Arizona real estate from Contract for Deed on Montana residence" which Debtors jointly own.

Schedule B lists Debtors' personal property, including the "2000 Dutchstar Motorhome" owned by Beverly, and $4,000 worth of cashier's checks from the sale of their Montana residence at item 1.

On Schedule C ("Property Claimed as Exempt") Debtors list under "Real Property" their Florence residence at 21335 Old Highway 93 as a homestead under MONT. CODE. ANN. § 70-32-104 and § 25-13-615, with a value of the claimed exemption stated in the amount of $215,000; and immediately below claimed as exempt under the same homestead statutes $30,000 described as "Earnest money for purchase of Arizona real estate from Contract for Deed on Montana residence (Declaration of Homestead recorded on 3/7/08 in Missoula County)."  Debtors also claimed as exempt under § 25-13-614 the sum of $150 in cash on hand, and the $4,000 in Cashier's checks from the contract for deed on their Montana residence under § 70-32-104 and

§ 25-13-615.[5]

Schedule D lists a first and second mortgage on the residence in Florence and judgment liens held by Dealer Services Corporation, Olson, and Kinney.  It appears from the schedules that Dealer Services Corporation holds a judgment lien against the Debtors' business.  CBS is not scheduled on Schedule D.

Schedule G lists under executory contracts and unexpired leases a "Contract for Deed to sell Montana Residence" naming the other parties to the contract as Shawn & Janis Fontaine of Stevensville, Montana.  The purchase agreement with Hailers was not listed on Schedule G. Asked on cross examination why that agreement was not listed on Schedule G, Beverly testified that the agreement had not closed until April 1 and they did not own the Arizona property.

Debtors' filed their five Motions to avoid judgment liens on July 22, 2015, each of which is based on § 522(f)(1)(A) on the grounds that the liens impair Debtors' homestead exemption to which they are entitled.  Beverly testified that the judgment liens of CBS, Kinney and the Olson Estate impair their homestead exemption.  CBS did not file a response.

The Olson Estate filed an objection on August 5, 2015, on the grounds that the Debtors contracted to sell their homestead to the Fontaines and to purchase real property in Arizona prepetition and because Timothy had been employed in Arizona for four months.  Kinney filed their objection on September 21, 2015, on the same grounds as the Olson Estate's objection, and in addition contended that Debtors' abandoned their Montana homestead prepetition and that an automatic homestead exemption attached to Debtors' Arizona property by state statute, ARIZ.

---

[5] The total homestead exemption claimed by Debtors is the $250,000 maximum allowed under MCA § 70-32-104(1).

Rev. Stat. § 33-1101, which was not waived because no waiver was recorded under Ariz. Rev. Stat. § 33-1104.

Ex. 2 is a Montana cadastral "Property Record Card" for 21335 Old US Highway 93 in Florence, which states that it was last modified on 8/24/2015. Ex. 2 states that Timothy Fix is the primary owner of the property.

On September 18, 2015, Debtors filed a motion for approval of the buy sell agreement of their Florence residence at 21335 Old Highway 93 South to the Fontaines. The motion was served on Kinney, CBS, the Olson Estate and other creditors. No objection was filed, and the Court entered an Order on October 6, 2015, granting Debtors' motion to sell 21335 Old Highway 93 under the terms of the buy sell agreement. That Order is final.

Fontaines agreed under the buy sell agreement to pay the Fixes an additional $20,000 if Fontaines cannot sell their house by October 31, 2015. Ex. A. Beverly testified that they did not give Fontaines possession of 21335 Old Highway 93 on the date they signed Ex. A, nor did they give Fontaines the right to own the property. She described Ex. A as a "very loose arrangement." Ex. A gives the Fontaines the right to inspect the property; Beverly did not know if Fontaines had completed a second property inspection to which they were allowed.

Beverly testified that she still has animals and a garage full of personal property at 21335 Old Highway 93. At the hearing, she testified that kept her animals and personal property at 21335 Old Highway 93 in case the sale to Fontaines did not go through and Fontaines defaulted. Beverly testified that she planned on returning to the property to retrieve her animals and belongings in contemplation of the closing of the sale of 21335 Old Highway 93, which had been approved. She expected that the closing of the sale of 21335 Old Highway 93 to the Fontaines

8

was expected to take place within a week of the hearing.

If, however, the Fontaines default under the terms of the agreement to purchase 21335 Old Highway 93, Beverly testified, she and Timothy will move back to Montana and 21335 Old Highway 93.

Although the attorneys for Kinney and the Olson Estate cross examined Beverly, they called no witnesses of their own in their cases-in-chief.  As a result, Beverly's testimony is uncontroverted.   This Court observed Beverly's demeanor while she testified under oath and under cross examination; the Court finds that Beverly is a credible witness.  *See In re Taylor*, 514 F.2d 1370, 1373-74 (9th Cir. 1975); *see also Casey v. Kasal*, 223 B.R. 879, 886 (E.D. Pa. 1998).

### DISCUSSION

Debtors move to avoid the judicial liens of Kinney, Olson Estate and CBS under § 522(f)(1)(A), which provides that "a debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is – (a) a judicial lien."  § 522(f)(1)(A).  *In re Chiu*, 304 F.3d 905, 907 (9th Cir. 2002); *In re Quane*, 16 Mont. B.R. 475, 476–77 (Bankr. D. Mont. 1998).

The purpose of lien avoidance under § 522(f) is to protect a debtor's exemptions. *Goswami v. MTC Distrib. (In re Goswami)*, 304 B.R. 386, 392 (9th Cir. BAP 2003).  The Ninth Circuit explained:

> The purpose of § 522(f)(1) is to provide relief for an overburdened debtor. *Farrey v. Sanderfoot*, 500 U.S. 291, 297–98, 111 S.Ct. 1825, 1829–30, 114 L.Ed.2d 337 (1991) (citing H.R.Rep. No. 95–595, at 126–27 (1977), U.S.Code Cong. & Admin. News 5963, 6087–88).  "[A] principal reason Congress singled out judicial liens was because they are a device commonly used by creditors to defeat the protection bankruptcy law accords exempt property against debts."  *Id*.

9

*Chiu*, 304 F.3d at 908.

Under § 522(f)1), "a debtor may avoid a lien if three conditions are met:  (1) there was a fixing of a lien on an interest of the debtor in property; (2) such lien impairs an exemption to which the debtor would have been entitled; and (3) such lien is a judicial lien." *Id.*, quoting *Estate of Catli v. Catli (In re Catli)*, 999 F.2d 1405, 1406 (9th Cir.1993).

 No dispute exists that the liens of Kinney, Olson Estate and CBS are judicial liens resulting from judgments, thus satisfying condition (3). Ex. 5, G.  From the time the judgments in favor of Kinney, Olson Estate and CBS were docketed, they became liens against the Debtors' real property in Missoula County pursuant to MONT. CODE ANN. ("MCA") § 25-9-301(2).[6]

Condition (1), that there was a fixing of a lien on an interest of the Debtors in property, also is satisfied by the evidence in the record.  The critical inquiry on condition (1) is whether the debtor possessed the interest to which the lien fixed, before it fixed.  *Chiu*, 304 F3d at 908, citing *Farrey*, 500 U.S. at 299.  The debtor need not have an interest in the property at the time it moves to avoid.  *Chiu*, 304 F3d at 908, quoting *In re Vincent*, 260 B.R. 617, 620-21 (Bankr. D. Conn. 2000).

The stipulated facts quoted above show that the Fixes purchased 21335 Old Highway 93 in Florence, Montana in March of 2005.  Ex. 5 shows that the Olson Estate judgment was recorded on October 22, 2014, while the Fixes resided on the property and before they either purchased the Arizona property or entered into the buy sell agreement with Fontaines in 2015.

---

[6] Section 25-9-301(2) provides in pertinent part:  "From the time the judgment is docketed, it becomes a lien upon all real property of the judgment debtor that is not exempt from execution in the county and that is either owned by the judgment debtor at the time or afterward acquired by the judgment debtor before the lien expires."

10

Thus, the Olson Estate judgment fixed on an interest of the Debtors in 21335 Old Highway 93.

Ex. G shows the date of entry of Kinney's judgment as March 9, 2015. Like the Olson Estate's judgment, the date Kinney's judgment was docketed is long after the date the Fixes possessed their ownership interests in the Florence homestead. On the other hand, it overlaps with the dates on which the Fixes contracted to sell their Florence property to the Fontaines. *See* Stipulated Fact 6.

Kinney argues that Debtors' interest in the Florence homestead ended on February 2, 2015, when they moved to Arizona and established an automatic homestead exemption in Arizona by state statute. Kinney's post-hearing brief does not cite a single case to support its argument.

The evidence does not support Kinney's argument. It is true that Ex. A, the purchase and sale agreement of 21335 Old Highway 93 South to Fontaines, is dated February 2, 2015. However, the Fontaines were not entitled to possession to the property until May 1, 2015, at the earliest, Ex. A, and that sale still had not closed as of the date of the hearing. No evidence or argument exists that Debtors' homestead declaration, Ex. 3, dated March 7, 2008, was in any way defective or invalid at the time they executed it. Stipulated Facts 3 and 5 establish that the Fixes moved into their homestead in March of 2005, and claimed it as their residence in their homestead declaration, Ex. 3, and that Timothy did not leave for Arizona until the winter of 2014-2015.

A claimant is entitled to temporarily vacate a homestead premises for such things as employment, as Timothy did, and still claim a homestead exemption. *In re Blastek*, 20 Mont. B.R. 523, 524 (Bankr. D. Mont. 2003); *In re MacKenzie*, 16 Mont. B.R. 338, 340-41 (Bankr. D.

Mont. 1998).  Section 70-32-302 provides that a "homestead can be abandoned only by a declaration of abandonment or a grant thereof . . . ."  Beverly answered "yes" when asked on direct examination by her attorney whether the Fixes filed an abandonment of their Montana homestead.  However, there is no written abandonment in the record, while Debtors' homestead declaration is in evidence as Ex. 3, and they claimed their homestead exemption on Schedule C.  The Court concludes, therefore, that any abandonment[7] of the Montana homestead was filed after the date on which the Fixes filed their Chapter 13 petition.

The Olson Estate argues, without citation to case law, that while the homestead may not be abandoned, the Debtors can waive their right to avoid judicial liens "by their conduct which is taking proceeds from the sale of the property and using those proceeds to acquire homestead property in another state."  That is an incorrect statement under both Montana and Arizona law.[8]

Timothy's departure for employment in Arizona did not affect Beverly's homestead exemption.  Since the Fixes are married, § 70-32-103, MCA, allows the homestead to be selected from the property of either spouse; Beverly signed the declaration of homestead Ex. 3.  Further, the evidence in the record shows that Beverly only briefly stayed in her motorhome on the Arizona property, then she returned to Montana.  Stipulated Fact 5.  The evidence shows that the

_____

[7] The Court suspects that Beverly was confused by the question when she answered "yes" when asked on direct examination whether she ever filed an abandonment of the Montana homestead.  No party followed up on that answer.  The absence of any recorded abandonment in the record is outweighed by the recorded homestead declaration and sworn statements on Schedule C.

[8] *In re White*, 377 B.R. 633, 645 (Bankr. D. Ariz. 2007), *aff'd.* 389 B.R. 693, 706 (9th Cir. BAP 2008), the BAP affirmed a bankruptcy court's holding that a debtor was liable for turnover to the trustee of $144,816.96 in homestead sale proceeds, which had been exempt for 18 months under ARIZ. REV. STAT. § 33-1101(C), when the debtor *failed* to use homestead sale proceeds to invest in a new homestead or other exempt purpose.  (Emphasis added).

sale to Fontaines has not closed.  Beverly's uncontroverted testimony is that if the Fontaines default under the buy sell agreement the Fixes will return to 21335 Old Highway 93 and resume residence in their homestead.

Debtors' "conduct" in taking proceeds from the sale of property and using them to acquire homestead property in another state is not inconsistent with § 70-32-216 ("Tracing homestead proceeds") which provides that if property that could have been claimed as a homestead has been sold, "the owner is entitled for 18 months to exemption of the proceeds that are traceable."  *In re Snyder*, 2006 MT 308, ¶ 13, 335 Mont. 11, 149 P.3d 26, 28, In *Snyder*, the Montana Supreme Court concluded that even though a person no longer resided on property, he or she could still claim a homestead under MCA § 70–32–216, which provides that if sold property could have been claimed an exempt homestead, the proceeds that are traceable to it may be exempted.  Beverly's testimony that all their exemptions claimed under Montana homestead statutes are traceable to the proceeds of the sale of 21335 Old Highway 93 is uncontroverted. The 18-month period of § 70-32-216(1) has not expired.   Debtors' total claimed exemption under the homestead statutes does not exceed the $250,000 limitation of § 70-32-103, MCA. Neither Kinney nor the Olson Estate filed an objection to Debtors' claim of homestead exemption.  Thus, the Court concludes that condition (1), that there was a fixing of Kinney's judgment lien on an interest the Debtors possessed in the property at 21335 Old Highway 93, is satisfied by a preponderance of the evidence in the record.  *Chiu*, 304 F3d at 908; *Farrey*, 500 U.S. at 299.

Condition (2), that the lien impairs an exemption to which the Debtors would have been entitled, is partially undisputed.  Kinney and Olson Estate failed to argue that their judicial liens

do not impair Debtors' homestead exemption.  They argue that Debtors are not entitled to a homestead exemption because Timothy moved to Arizona and established an automatic homestead exemption under Arizona statutes and that they waived their right to avoid judicial liens.  The Olson Estate argues that the deed between Hailers and Debtors was valid upon execution and acknowledgment under Arizona law.

Debtors contend that they held valid homestead rights in their Florence, Montana, residence on the date they filed their bankruptcy petition; that they did not claim or have any Arizona homestead rights on the petition date; and that MCA § 70-32-216(1) allows them to exempt the proceeds that are traceable from the sale of their Montana homestead for 18 months, citing *Snyder*, 2006 MT 308, ¶¶ 9, 10.

Section 522(b)(3)(A) provides for exemption of property under Federal, or State or local law,

> that is applicable on the date of the filing of the petition to the place in which the debtor's domicile has been located for the 730 days immediately preceding the date of the filing of the petition or if the debtor's domicile has not been located in a single place for such 730-day period, the place in which the debtor's domicile was located for 180 days immediately preceding the 730-day period or for a longer portion of such 180-day period than in any other place.

§ 522(b)(3)(A); *See In re Urban*, 375 B.R. 882, 888-89 (9th Cir. 2007).

The Olson Estate and Kinney argue that Arizona statutes govern the Debtors' allowance of exemptions.  However, the 730-day domicile period required under § 522(b)(3)(A) is not shown by the evidence in the record with respect to either Timothy or Beverly in Arizona. Stipulated Fact 5 establishes that Timothy drove Beverly's motorhome to Arizona in the winter of 2014-15, which at most is 180 days.  Section 522(b)(3)(A) thus prohibits Debtors from

14

claiming exemptions under Arizona law even if they wished to because they do not meet the 730-day domicile requirement in Arizona.  To the extent Arizona's statutory "automatic" homestead exemption or other statutes conflict with § 522(b)(3)(A), the law of the United States controls under the Supremacy Clause.  U.S. Const. art. 6, cl. 2.

Olson Estate argues that the unrecorded deed of the Arizona property from Hailers to the Fixes was valid when the deed was executed on March 30, 2015, not when the deed was recorded after the closing on April 1, 2015, citing Ariz. Rev. Stat. § 33-412B which provides "Unrecorded instruments, as between the parties and their heirs, and as to all subsequent purchasers with notice thereof, or without valuable consideration, shall be valid and binding." As a result, Olson Estate contends, the Debtors acquired legal ownership of the Arizona property, subject to Arizona exemption statutes, when the Hailers executed the deed on March 30, 2015, instead of April 1, 2015.

Olson Estate cites no case authority supporting its argument and fails to take into account the legal effect of an escrow.  In a 1925 case, the Arizona Supreme Court in *Lewis v. Rouse*, 19 Ariz. 156, 160-61, 240 P. 275*, wrote that, when a deed of conveyance is placed in escrow, the law provides that a purchaser is not entitled to possession of premises if he has failed to perform his agreement to make payments.

> The legal principles which must govern the determination of the case are all well settled. If the contract in such cases be silent as to possession by the vendee, he is not entitled to it (citing cases).  If the contract stipulates for possession by the vendee, or the vendor puts him in possession, he holds as a licensee.  The relation of landlord and tenant does not subsist between the parties. The characteristic feature of that relation is wanting.  The vendee pays nothing for the enjoyment of the property.  The case comes within the category of a license (citing cases). In such cases the vendee cannot dispute the title of the vendor any more than the lessee can question the title of his lessor (citing cases).  The assignee of the vendee is as much bound by the estoppel as the vendee himself (citing cases).

15

> Upon default in payment of any installment of the purchase money, the possession becomes tortious, and the vendor may at once bring ejectment.

*Lewis v. Rouse*, 19 Ariz. 156, 160-61, 240 P. 275, quoting *Burnett v. Caldwell*, 9 Wall. 290, 19 L.Ed. 712.

The court repeated the rule from *Lewis v. Rouse* in *Snyder v. Betsch*, 56 Ariz. 508, 512, 109 P.2d 613 (1941).  It appears to remain good law in Arizona.[9]

Stipulated Facts 8, 9, 10, 11, and 12 establish the down payment made by the Fixes to Hailers was placed in escrow and the closing took place on April 1, 2015, after the date Fixes filed their Chapter 13 petition.  Ex. B is the buy sell agreement for the Fixes' purchase of the Arizona property.  It provides that deed of trust shall be recorded at the Close of Escrow, which is specified at Part 1d as April 1, 2015, and discussed further at Part 3.  Part 1e provides that the Seller shall deliver possession of the premises at the Close of Escrow.  Given this stipulated and uncontroverted evidence and the Arizona Supreme Court decision in *Lewis v. Rouse*, 19 Ariz. at 160-61, this Court does not agree with the Olson Estate that the Fixes acquired legal ownership of the Arizona property on March 30, 2015, thereby triggering Arizona homestead statutes.

Stipulated Fact 5 establishes that Beverly remained behind at their Montana homestead when Timothy moved to Arizona, and her testimony that they will return to their Montana homestead if the Fontaines default is uncontroverted.  Thus, under § 522(b)(3)(A), Debtors may exempt property under Montana law.

Pursuant to § 522(b)(2), Montana has opted out of the federal exemption scheme by

---

[9] Montana has a statute, MCA § 70-1-511 ("Delivery in escrow") which provides for a similar result:  "A grant may be deposited by the grantor with a third person, to be delivered on performance of a condition, and on delivery by the depositary, it will take effect.  While in the possession of the third person and subject to condition, it is called an escrow."

means of MCA § 31-2-106.  *In re Moore*, 21 Mont. B.R. 255, 257 (Bankr. D. Mont. 2006); *In re Zimmerman*, 2002 MT 90, ¶ 8, 19 Mont. B.R. 368, 370 (2002).  This Court thus looks to state law rather than federal law to determine the validity of the Debtors' claimed homestead exemption in 21335 Old Highway 93 in Florence.  *Moore*, 21 Mont. B.R. at 257; *Kelley v. Locke (In re Kelley)*, 300 B.R. 11, 16 (9th Cir. BAP 2003) .  Under Montana law, homestead and exemption statutes must be liberally construed in favor of debtors.  *McCone Cty. Fed. Credit Union v. Gribble*, 2009 MT 290, ¶ 21, 352 Mont. 254; Constitution of the State of Montana, Article XIII, section 5; *In re Zimmerman*, 2002 MT 90, at ¶ 15, 19 Mont. B.R. at 373.

A debtor's entitlement to claimed exemptions generally is determined as of the date the bankruptcy petition is filed.  *In re Cherchione*, 414 B.R. 540, 548 (9th Cir. BAP 2009); *In re Chiu*, 266 B.R. 743, 751 (9th Cir. BAP 2001), *aff'd.,* 304 F.3d 905 (9th Cir. 2002); *Goswami*, 304 B.R. at 391-92, citing *White v. Stump*, 266 U.S. 310, 313, 45 S.Ct. 103, 69 L.Ed. 301 (1924), and *Chiu.*  However, the Ninth Circuit Court of Appeals has reversed this Court for ruling that debtors could not file a declaration of homestead after the date of their bankruptcy petition.  *See Martinson v. Michael*, 163 F.3d 526, 529 (9th Cir. 1998).

This Court above rejected Kinney's and the Olson Estate's arguments that the Debtors' waived their Montana homestead exemption by selling it to Fontaines, a sale which the evidence showed had not closed as of the date of the hearing, and that Debtors triggered an automatic homestead exemption under Arizona statute when Timothy moved Beverly's motorhome onto Hailers' Arizona property.  The evidence shows that the close of escrow of the Arizona purchase did not occur until after the petition date, on April 1, 2015.

On the petition date of March 30, 2015, the stipulated facts show that Beverly remained at

21335 Old Highway 93 in Florence, where the Fixes had resided since 2005 and for which they recorded a declaration of homestead in 2008.  Beverly's testimony and Stipulated Fact 9 shows that the Fixes used $30,000 of the $40,000 received from the Fontaines in early 2015 to make their down payment to Hailers on the Arizona property and the other $10,000 is traceable to the proceeds from the pending sale of their homestead to Fontaines.  The proceeds are traceable from the sale of Debtors' Montana homestead and are exempt for 18 months under § 70-32-216(1).

MCA § 70-32-101 provides that a "homestead consists of the dwelling house or mobile home, and all appurtenances, in which the claimant resides and the land, if any, on which the same is situated, selected as provided in this chapter."  By way of limitation, MCA § 70-32-104(1) provides that a "homestead may not exceed $250,000 in value."  Debtors' claims of exemptions of homestead and traceable homestead proceeds do not exceed the $250,000 limit.

In sum, based upon the language of MCA §§ 70-32-101, 70-32-104, 70-32-201 ("Homestead exempt from execution generally") and 70-32-216(1) and under the liberal construction of those statutes under the Montana Constitution, this Court finds and concludes that the Debtors have shown by a preponderance of the evidence that they are entitled to their claims of homestead exemption in 21335 Old Highway 93 in Florence, Montana, and traceable proceeds therefrom, in an amount not to exceed $250,000 in value.

Turning to whether the judicial liens impair Debtors' exemption, under § 522(f)(2)(A) a lien shall be considered to impair an exemption to the extent that the sum of:  (i) the lien, (ii) all other liens on the property, and (iii) the amount of the exemption that the debtor could claim if no liens existed on the property, exceeds the value that the debtor's interest in the property would have in the absence of any liens.  The Stipulated Facts fix the amounts of judgment liens of CBS

18

($5,000), Kinney ($10,419.11) and the Olson Estate ($48,184.38), which together total $63,603.49.  The Proofs of Claim on file in this case, to which no objections have been filed and are deemed prima facie evidence of validity and amount under F.R.B.P. Rule 4001, show a first deed of trust against Debtors' homestead in the amount of $169,182.41 (Proof of Claim 24), a second deed of trust in the amount of $13,242.38 (Proof of Claim 13), and a third deed of trust in the amount of $24,626.20 (Proof of Claim 16), which together total $207,050.99.  All of the liens against Debtors' homestead total $270,654.48.  § 522(f)(2)(A)(I) & (ii).

Adding to that sum the Debtors' $250,000 allowable exemption results in an amount of $520,654.48. § 522(f)(2)(iii).  Under the formula of § 522(f)(2)(A), the judicial liens of CBS, Kinney and the Olson Estate impair Debtors' exemption to the extent that $520,654.48 exceeds the value of the Debtors' interest, shown by Stipulated Fact 17 as $335,000, which results in an impairment to the extent of $185,654.48.  The result is that the judicial liens of CBS, Kinney and the Olson Estate, which together total $63,603.49, are avoidable in their entire amount under § 522(f)(1)(A).

**IT IS ORDERED** a separate Order shall be entered in conformity with the above overruling the objections of Kinney and the Olson Estate and granting Debtors' five Motions to avoid the judicial liens CBS, Kinney and the Olson Estate arising from judgments against the Debtors entered in Missoula County, Montana.

Honorable Ralph B. Kirscher
Chief U.S. Bankruptcy Judge

19